## U S FIDELITY & GUARANTY CO v ALLIED PRODUCTS CO

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided May 15, 1933

Simmons, DeWitt & Vilas, Cleveland, for plaintiff in error.

J. R. Kistner, Cleveland, for defendant in error.

LEVINE, J.

We are of the opinion that the claim of the United States Fidelity & Guaranty Company that the payments received by O. B. Loomis as treasurer of The Johnson Material Company, were likewise received by him as treasurer of The Allied Products Company, is fully sustained by undisputed evidence on this point.

When O. B. Loomis made these arrangements with B. K. Hines whereby he induced the latter to make the assignment above referred to, to the Johnson Material Company, he voted simultaneously in behalf of all the companies which he represented. The common directors, common stautory agent, common officers, common supervision of books and records, common preparation of attested accounts, common use of stationery and the common knowledge of what O. B. Loomis was doing, leads to but one conclusion resting upon undisputed evidence, that O. B. Loomis received these payments under the assignment from B. K. Hines to The Johnson Material Company, in the capacity of Treasurer of The Allied Products Company as well as Treasurer of The Johnson Material Company.

We agree with the statement of the law contained in plaintiff in error's brief, namely, that it is an elementary principle in the law of suretyship that:

"the contract of a surety imports entire good faith between him and the creditor, which must be kept inviolate in all subsequent dealings between the creditor and the principal debtor." White's Admr., v Life Assn. of America, 63 Ala., 419.

In accordance with this principle, it was generally held that where a principal tenders payment of his debt, the creditor is bound to receive it. If he declines it, or, having received it, he reloans or repays it to the principal, the surety is discharged.

"The rule is well settled that a surety is discharged if a tender of payment made after the debt is due is refused by the creditor. One of the reasons sometimes assigned for this rule is that the transaction amounts to a payment of the debt, and a new loan to the principal. If the principal tenders payment in full, after the debt is due, it is bad faith toward the surety, on the part of the creditor to refuse it, for he may ·thereby invert the order ·in which principal and surety are liable as between themselves; and he changes the nature and character of the liability of the surety, compelling him to guarantee for a further and

additional period of time, the ability of the principal to make the payment." 21 R.C. Law, 1046.

In the case at bar, the evidence is undisputed that O. B. Loomis, Treasurer of The Allied Products Company, The Johnson Material Co., and The Goff-Kirby Co., personally drew checks upon funds received upon the contract of B. K. Hines, whereby he released and gave back the sum of $20,-030.00 after it was once in the possession of and under the control of said O. B. Loomis as such treasurer.

In White's Admr. v Life Association of America, supra, the court held:

"If the creditor has in his hands moneys of the principal which he may rightfully retain, and voluntarily surrenders them to the principal, whom he knows to be insolvent, he is guilty of bad faith to the surety, and the latter is discharged to the extent of such moneys."

The opinion contained the following pertinent language:

"It is difficult to abstain from imputing to him a want of good faith, or of distinguishing between his conduct and an interpretation of obstacles preventing the surety from being fully indemnified. The liability of the surety, which could be immediately extinguished, is, without his assent, prolonged." Fegley v McDonald, 89 Pa. 128.

In Spurgeon v Smitha, 114 Ind. 453, the court said:

"The contract made by the creditor and principal wherein the former, after accepting part payment of the debt, reloaned the latter the remainder of the money due, released the sureties. * * * The fact of the creditor, in refusing the money tendered him by the principal debtor, released the sureties. * * * It is clear to us that where the creditor declines to receive the money offered him, he elects to change the contract, for it is as much part of the contract that he should accept the money when tendered as that the debtor should pay it."

When Mr. Loomis, acting for his companies, brought about the arrangement whereby B. K. Hines made a complete assignment to the Johnson Material Company of all that was due to him from time to time under his contract with the county commissioners of Lake County, and when he received various payments from the county commissioners under said assignment, it became his duty to apply it to the full satisfaction of the claims due to the various companies for which he was act-

ing. Having chosen to repay part of the money received by him, to B. K. Hines, instead of applying the same to the full discharge of the debts due to the various companies, Loomis was representing, the surety is discharged to the extent of such money repaid.

We also agree with the assertion of plaintiff in error that the arrangement for the taking of the assignment of estimates due the principal, B. K. Hines, without the knowledge and consent of The United States Fidelity & Guaranty Company, amounts to a material alteration of the contract, which operated as a discharge of the surety. A reading of the suretyship contract which The United States Fidelity & Guaranty Company signed, discloses that it provides that payments should be made by the county commissioners to the contractor B. K. Hines. It did not provide that such payments should be made to one of his creditors. The funds due to the principal are not the subject of an assignment. The principal has no legal right or power to assign such funds to a creditor whom he may choose to prefer. The funds belong as much to the surety as to the principal, and cannot be diverted by him to the payment of any one creditor. In this arrangement between Loomis as Treasurer of the Johnson Material Company, The Allied Products Company, and The Goff-Kirby Company, and B. K. Hines, the rights of the surety company are materially affected. The surety had a right to retain the funds for its own use in the event that it may be required to take over and complete the contract upon the default of the principal contractor. Mr. Loomis, in acting as he did, sought to make his own private arrangements in behalf of his companies for additional protection by becoming the custodian of the funds due B. K. Hines under the contract. The surety company was not at any time consulted by Mr. Loomis, nor asked to give its judgment as to the proper distribution of the funds so assigned to him. When Mr. Loomis assumed financial control of the contract, he thereby deprived B. K. Hines of his own judgment and ability to procure and pay for materials where and as he chose. This arrangement was not within the contemplation of the surety when it executed the bond.

It will be observed that the bond executed by the surety company does not expressly mention the Allied Products Company. The Allied Products Company seeks the benefit of the protection of the bond by virtue of the general code which extends to material

men the benefit of such bond. Generally speaking, a suretyship contract for the performance of public work, which under the law is operative for the benefit and protection of laborers, mechanics and material men, will be effective for their protection regardless of changes and alterations subsequently made between the principal contractor and the other contracting party, even though the same are made without the knowledge and consent of the surety on the contractor's bond. This is so because the laborers, mechanics and material men have no control of the sections of the contracting parties.

In the case at bar, however, not only did The Allied Products Company have knowledge but participated through its agent, Loomis, in bringing about material changes in the manner of payment under the construction contract.

We are of the opinion that the trial court committed error in overruling the motion of the plaintiff in error for judgment. The judgment of the Common Pleas Court is ordered reversed and final judgment is entered in favor of the plaintiff in error.

McGILL, J, concurs in judgment.
LIEGHLEY, PJ, dissents.